Date signed July 24, 2014



DAVID E. RICE
U.S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | | |
|---|---|---|
| In re: | * | |
| DAVID A. REECHER, | * | Case No. 11-30365-DER |
| Debtor. | * | (Chapter 7) |

\* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| DAISY COULOOTE PHILLIP, | * | |
| Plaintiff, | * | |
| vs. | * | Adversary Pro. No. 12-00061-DER |
| DAVID A. REECHER, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### <u>MEMORANDUM OPINION</u>

Daisy Couloote Phillip is the holder of a judgment entered by the Circuit Court for Prince George's County, Maryland (the "Circuit Court") in her favor and against David A. Reecher in the amount of $2,650,000.  The complaint filed by Daisy Phillip in the Circuit Court asserted claims in ten counts, five of which sought both compensatory and punitive damages against

David Reecher under Maryland law for civil conspiracy, intentional misrepresentation, constructive fraud, concealment and non-disclosure, and conversion.  The Circuit Court entered a judgment against David Reecher for $150,000 in compensatory damages, plus $500,000 in punitive damages on each of those five counts.

After David Reecher filed a voluntary Chapter 7 bankruptcy petition in this court, Daisy Phillip commenced this adversary proceeding in which she asks for a determination under 11 U.S.C. § 523(a)(2) that the entire amount of her judgment is a claim that is excepted from discharge (that is, nondischargeable) by reason of "fraud, false pretenses, and misrepresentations with actual malice and intent to deceive."  David Reecher contends that he did not commit fraud or make any intentional misrepresentations, is not bound by the Circuit Court judgment because it was a default judgment, and is entitled to a fresh opportunity in this court to litigate whether he is liable to Daisy Phillip at all and the nature of any such liability.  For the reasons that are explained in this opinion neither party is correct.  Collateral estoppel applies and the judgment is nondischargeable in part, but the remainder of the judgment is dischargeable.

A trial on the merits was conducted over the course of seven days starting on October 15, 2013 and concluding on October 24, 2013.  At the trial, both Daisy Phillip and David Reecher called witnesses to testify (including themselves) and offered numerous exhibits that were introduced into evidence.  Following the trial, I held this matter under advisement and requested post-trial memoranda from the parties, the last of which was filed on December 2, 2013 [Docket Nos. 115, 116, 117, and 118].

## **INTRODUCTION**

The application of collateral estoppel is not discretionary.  This case must be decided in light of the Fourth Circuit's instruction that "Federal courts must give the same preclusive effect

to a state court judgment as the forum that rendered the judgment would have given it." Sartin v. Macik, 535 F.3d 284, 287 (4th Cir. 2008). It is well settled in the Fourth Circuit that "[t]o preclude a debtor from litigating an issue dispositive of discharge, the record in the case giving rise to the judgment debt must show that the issue was actually litigated and determined by a final valid judgment … and that it was necessary to the decision." In re Raynor, 922 F.2d 1146, 1149 (4th Cir. 1991) (citing Combs v. Richardson, 838 F.2d 112, 113 (4th Cir. 1988)). In considering this matter, I am mindful that "the determination that an issue was actually litigated and necessary to the judgment must be made with particular care." Combs v. Richardson, 838 F.2d at 113. This court must determine to what extent the Circuit Court's findings of fact are consistent with the findings of fact necessary for a determination of nondischargeability and whether this court needs to make additional findings of fact in order to determine the nondischargeability of the claims of Daisy Phillip.

David Reecher relies on Gulati v. McClendon (In re McClendon), 415 B.R. 170 (Bankr. D. Md. 2009), to support his contention that he is entitled to a second opportunity to litigate in this court. In McClendon, the court found that collateral estoppel did not apply to the state court judgment in question because the record of the lower court proceeding was "silent as to whether the issues determined there are identical to those tried here." Id. at 182. It is indeed the case that, as stated in McClendon, "[c]ollateral estoppel is not appropriate when a finding of nondischargeability requires proof of an element not litigated in the earlier proceeding." Id. In the instant matter, however, this court has the transcript and a record of the findings of fact made by the Circuit Court at the damages hearing that provide the factual basis for the determination of whether Daisy Phillip's claims are nondischargeable. The Circuit Court awarded punitive damages on the five counts of civil conspiracy, intentional misrepresentation, constructive fraud,

concealment and non-disclosure, and conversion; necessarily finding that all elements of each of those causes of action had been shown by Daisy Phillip.

Applying these principles and after careful consideration of the evidence (particularly the record in the litigation in the Circuit Court), I find for the reasons explained below that (i) David Reecher is bound by the judgment entered by the Circuit Court and is not entitled to a second opportunity to litigate his liability to Daisy Phillip in this court, (ii) the compensatory damages of $150,000 and the punitive damages of $500,000 each awarded by the Circuit Court under the intentional misrepresentation, civil conspiracy, and concealment and non-disclosure counts in Daisy Phillip's complaint are claims that are excepted from discharge under § 523(a)(2) (that is, they are nondischargeable claims), and (iii) the punitive damages awarded by the Circuit Court on the other two counts are not excepted from discharge under § 523(a)(2) (that is, they are dischargeable claims).[1]

## JURISDICTION

The court has subject matter jurisdiction over this proceeding under 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and Rule 402 of the Local Rules of the United States District Court for the District of Maryland. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(I). This memorandum opinion constitutes the court's findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure (made applicable here by Rule 7052 of the Federal Rules of Bankruptcy Procedure).

---

[1] This memorandum opinion is limited to consideration of the application of 11 U.S.C. § 523(a)(2)(A) to the claims made by Daisy Phillip. Nothing in her complaint, pre-trial memorandum, arguments at trial, or post-trial memoranda asserted that her claims are excepted from discharge under any other provision of § 523(a).

## FINDINGS OF FACT

Daisy Phillip filed a verified complaint against David Reecher and others in the Circuit Court on February 17, 2009 that was docketed as <u>Daisy Couloote Phillip v. Chesapeake Home Buyers, et al.</u>, Case No. CAL09-04792.  The course of the litigation in the Circuit Court is revealed in the Civil Case Summary.[2]  On July 8, 2009, Aaron G. Seltzer entered an appearance in the Circuit Court litigation and filed a motion to dismiss the verified complaint on behalf of David Reecher as well as defendants Chesapeake Home Buyers ("Chesapeake"), Eric Golden, Landco Investments, Inc. ("Landco"), and 5444 Taylor Street, LLC.[3]  Plaintiff's Ex. 39, p. 5 of 26.  Daisy Phillip thereafter filed a first and a second amended verified complaint.  On December 18, 2009, the Circuit Court held a hearing at which the motion to dismiss was granted with leave for Daisy Phillip to file a further amended complaint within 30 days.  Plaintiff's Ex. 39, pp. 8-9 of 26.

### The Third Amended Complaint

Daisy Phillip[4] filed her Third Amended Verified Complaint for Money Damages (the "Third Amended Complaint") [Plaintiff's Ex. 1] on January 14, 2010.  The Third Amended

---

[2]  The Civil Case Summary was introduced into evidence as part of Plaintiff's Exhibit 4 (Affidavit Pursuant to Local Bankruptcy Rule 7016-1(d)(1)) and Plaintiff's Exhibit 39 (Authentication of Record).  For ease of reference in this Memorandum Opinion, I refer to the Civil Case Summary by the page numbers in Plaintiff's Exhibit 39.

[3]  Veracity Title, LLC ("Veracity Title") was also named as a defendant in Daisy Phillip's complaint and amended complaints.  By a separate course of proceedings not relevant here, the Circuit Court ultimately dismissed all of Daisy Phillip's claims against Veracity Title by an order entered on April 27, 2010 after a hearing held on March 26, 2010.  Plaintiff's Ex. 39, p. 13 of 26.

[4]  For the sake of simplicity, I refer to the plaintiff in this opinion as "Daisy Phillip."  Her maiden name was apparently Daisey M. Williams.  After her first marriage, she was known as Daisey High.  After she remarried, she was and is now known as Daisey Couloote Phillip.  At the time she purchased the Property (as defined below) in 1999, she took title by a Deed that identified her as Daisey M. Williams.  At the time of the events in 2007 at issue here, she was known and referred to in various documents as Daisey Williams High and/or Daisey M. High.  The plaintiff was identified in the Third Amended Complaint and in her complaint filed in this court as "Daisy" Couloote Phillip, which I take to be a typographical error since she signed her name to the verification of the Third Amended

Complaint contains nine counts against David Reecher and other defendants for breach of fiduciary duty (Count 1), unjust enrichment (Count 2), civil conspiracy (Count 3), intentional misrepresentation (Count 4), negligent misrepresentation (Count 5), constructive fraud (Count 7), concealment and non-disclosure (Count 8), conversion (Count 9), and unfair and deceptive trade practices (Count 10).[5]  In each of those counts, Daisy Phillip requested entry of judgment against David Reecher for compensatory damages in the amount of $289,000.  In addition, Daisy Phillip sought punitive damages in the amount of $500,000 against David Reecher for five of those counts – namely, the counts for civil conspiracy (Count 3), intentional misrepresentation (Count 4), constructive fraud (Count 7), concealment and non-disclosure (Count 8), and conversion (Count 9).  The Third Amended Complaint alleges the following facts.

Daisy Phillip was the owner of real property located at 5444 Taylor Street, Bladensburg, Maryland 20710 (the "Property").  David Reecher, Eric Golden, Chesapeake, Landco, and 5444 Taylor Street, LLC acting in concert intentionally and with malice deceived Daisy Phillip into executing documents that divested her of ownership of the Property and intentionally and fraudulently obtained the equity value of the Property.  The course of events began in or about April of 2007 when Daisy Phillip contacted Chesapeake through use of the yellow pages.  Shortly thereafter, Eric Golden met with Daisy Phillip and identified himself to her to be the representative and an officer of Chesapeake and Landco.  Eric Golden advised Daisy Phillip that

---

Complaint as "Daisy" Couloote Phillip.  This error has been perpetuated in various pleadings filed in this case and in the Circuit Court (including the judgment entered in her favor by the Circuit Court).  In any event, there is no dispute and I find for purposes of this decision that all such names (and any variations thereof) refer to one and the same person – that is, the plaintiff in this adversary proceeding, Daisey Couloote Phillip.

[5] Count 6 of the Third Amended Verified Complaint asserts a claim for negligence solely against Veracity Title.

he was able to list and sell the Property, and he agreed to sell the Property through Chesapeake and to reimburse the equity in the Property to her.  Plaintiff's Ex. 1, ¶¶ 11-15.

Eric Golden had with him pre-prepared blank documents which Daisy Phillip signed on the day he met with her.  Eric Golden fraudulently induced Daisy Phillip to sign those documents describing them as a contract for sale of her Property by Chesapeake.  Eric Golden promised that the documents would be filled out and forwarded to Daisy Phillip once they were completed by the principals of Chesapeake or Landco.  The documents that Eric Golden induced Daisy Phillip to sign included organization documents for 5444 Taylor Street, LLC.  Plaintiff's Ex. 1, ¶¶ 16-18.

5444 Taylor Street, LLC was a Maryland limited liability company that had offices at 1633 Bald Eagle Road, Arnold, Maryland 21012, the same address as Chesapeake, Landco, and David Reecher.  Plaintiff's Ex. 1, ¶¶ 5-9, 37.  The blank documents initially signed by Daisy Phillip provided that she was the sole owner of 5444 Taylor Street, LLC.  Plaintiff's Ex. 1, ¶¶ 18, 37.  The blank documents also included a Deed that without Daisy Phillip's knowledge, authorization, or consent purported to transfer title to the Property to 5444 Taylor Street, LLC.[6] Plaintiff's Ex. 1, ¶¶ 18, 19.  On or about May 7, 2007, Veracity Title conducted a settlement at the request of David Reecher, Eric Golden, Chesapeake, and Landco that transferred the Property to 5444 Taylor Street, LLC without the knowledge, authorization, or consent of Daisy Phillip. Plaintiff's Ex. 1, ¶ 21.

---

[6]  A copy of the Deed to 5444 Taylor Street, LLC was attached as Exhibit B to the Third Amended Complaint. Plaintiff's Ex. 1, ¶ 19.  Although the Third Amended Complaint was admitted into evidence in this court without that exhibit attached, a copy of the Deed as recorded in the Land Records of Prince George's County, Maryland on August 17, 2007 was admitted separately into evidence at trial.  Plaintiff's Ex. 15, DCP-243.  The Deed was also admitted into evidence as Exhibit No. 2 at the December 17, 2010 hearing in the Circuit Court.  Plaintiff's Ex. 3, DCP-048, ln. 10.

David Reecher was the resident agent for 5444 Taylor Street, LLC [Plaintiff's Ex. 1, ¶ 37] and signed its Articles of Organization (the "Articles of Organization") to confirm his consent to act as its resident agent.[7]   Eric Golden acting as an agent of Chesapeake and in concert with David Reecher intentionally and fraudulently induced Daisy Phillip to execute an assignment to Landco of her membership interest in 5444 Taylor Street, LLC.[8]   Plaintiff's Ex. 1, ¶ 26.   David Reecher, who was the President of Landco, signed the Assignment on its behalf. Plaintiff's Ex. 1, ¶ 7.   Landco (and thus 5444 Taylor Street, LLC) was exclusively controlled by David Reecher.   Plaintiff's Ex. 1, ¶ 26.

After the meeting with Eric Golden, Daisy Phillip was induced to move out of the Property in order to expedite its sale.   At that time, she owned the Property subject to one mortgage debt in the amount of approximately $99,555, secured by a Deed of Trust held by Citi-Mortgage.   Plaintiff's Ex. 1, ¶ 20.

On or about June 28, 2007, Eric Golden met with Daisy Phillip at her new residence.   At that time, Eric Golden induced Daisy Phillip to sign a document titled as "Affidavit of 5444 Taylor Street, LLC" (the "Affidavit") under false pretenses.   The Affidavit purported to confirm that Daisy Phillip was transferring the Property to 5444 Taylor Street, LLC.   The Affidavit was signed by Daisy Phillip on June 28, 2007 and notarized by David Williamson, an employee of Landco, on June 29, 2007, a different date.   The Affidavit was inconsistent with the previously

---

[7]  A copy of the Articles of Organization was attached as Exhibit A to the Third Amended Complaint.   Plaintiff's Ex. 1, ¶ 18.   Although the Third Amended Complaint was admitted into evidence in this court without that exhibit attached, a copy of the Articles of Organization dated April 23, 2007 was admitted separately into evidence at trial. Plaintiff's Ex. 7, DCP-124.

[8]  A copy of the Assignment of Membership and Economic Interest (the "Assignment") was attached as Exhibit G to the Third Amended Complaint.   Plaintiff's Ex. 1, ¶ 26.   Although the Third Amended Complaint was admitted into evidence in this court without that exhibit attached, a copy of the Assignment dated April 26, 2007 was admitted separately into evidence at trial.   Plaintiff's Ex. 7, DCP-138.   The Assignment was also admitted into evidence as Exhibit No. 5 at the December 17, 2010 hearing in the Circuit Court.   Plaintiff's Ex. 3, DCP-050, ln. 6.

signed documents, which purported to transfer her interest in the Property to 5444 Taylor Street, LLC and to transfer her interest in 5444 Taylor Street, LLC to Landco.[9]  Plaintiff's Ex. 1, ¶ 23.

Eventually, a Residential Contract of Sale for the Property in the amount of $289,000 was submitted by Antonio Saabedra and Josefa Rosales on or about October 10, 2007.[10]  The contract identified the seller as "Daisey M. Williams and/or 5444 Taylor Street, LLC," and was accompanied by several documents that stated the seller was solely "Daisey M. Williams."  On or about November 9, 2007, Veracity Title conducted a settlement on that contract.  According to the Settlement Statement (Form HUD-1) (the "HUD-1")[11] and the Itemized Disbursement Statement (the "Disbursement Statement")[12] for the settlement, the net sale proceeds of $151,272.84 were to be paid to 5444 Taylor Street, LLC, but were in fact transferred by wire to Landco.  A Deed was recorded in the Land Records of Prince George's County, Maryland on or

---

[9]  A copy of the Affidavit was attached to the Third Amended Complaint.  Although the Third Amended Complaint was admitted into evidence in this court without the attached exhibits, a copy of the Affidavit was admitted separately into evidence at trial.  Plaintiff's Ex. 7, DCP-159.  A copy of the Affidavit as filed in the Land Records of Prince George's County, Maryland on August 17, 2007 along with the Deed was also admitted into evidence at trial. Plaintiff's Ex. 15, DCP-247.

[10]  A copy of the Residential Contract of Sale was attached as Exhibit I to the Third Amended Complaint.  Although the Third Amended Complaint was admitted into evidence in this court without exhibits, a copy of the Residential Contract of Sale was admitted separately into evidence at trial.  Plaintiff's Ex. 17; Defendant's Ex. 37.  The Residential Contract of Sale was also admitted into evidence as Exhibit No. 6 at the December 17, 2010 hearing in the Circuit Court.  Plaintiff's Ex. 3, DCP-051, ln. 3.  At trial in this court, Gary Rand testified that David Reecher directed him to execute the Residential Contract of Sale and to attend the subsequent closing on behalf of the seller.

[11]  A copy of the HUD-1 was attached as Exhibit H to the Third Amended Complaint.  Although the Third Amended Complaint was admitted into evidence in this court without exhibits, a copy of the HUD-1 was admitted separately into evidence at trial.  Plaintiff's Ex. 13; Defendant's Ex. 42.  The HUD-1 was also admitted into evidence as Exhibit No. 7 at the December 17, 2010 hearing in the Circuit Court.  Plaintiff's Ex. 3, DCP-052, ln. 5.

[12]  A copy of the Disbursement Statement was attached as Exhibit L to the Third Amended Complaint.  Although the Third Amended Complaint was admitted into evidence in this court without exhibits, a copy of the Disbursement Statement was admitted separately into evidence at trial.  Plaintiff's Ex. 18; Defendant's Ex. 43.  The Disbursement Statement was also admitted into evidence as Exhibit No. 9 at the December 17, 2010 hearing in the Circuit Court. Plaintiff's Ex. 3, DCP-053, ln. 23.

about November 30, 2007 that transferred the Property to Antonio Saabedra and Josefa Rosales without the knowledge, authorization, or consent of Daisy Phillip.  Plaintiff's Ex. 1, ¶¶ 27-30.

Daisy Phillip contacted Eric Golden in November of 2007 to inquire about the sale of the Property, at which time she was informed that the Property had been sold and that she should soon receive her money from the proceeds of sale.  She subsequently made numerous attempts to reach Eric Golden by telephone, but her calls were not returned.  On or about March 5, 2008, Daisy Phillip received a check for $1,000 from Landco and was informed she would receive weekly checks until the full net sale price was paid to her.  She received no further payments, and then discovered for the first time that the documents she signed provided for organization of 5444 Taylor Street, LLC and the transfer of her interest in 5444 Taylor Street, LLC to Landco, and that a deed transferring the Property to 5444 Taylor Street, LLC was recorded on August 17, 2007 without her knowledge, authorization, or consent.  Plaintiff's Ex. 1, ¶¶ 32-36.

### The Role of Aaron Seltzer

After the Third Amended Complaint was filed by Daisy Phillip in the Circuit Court, no answer or other response was filed and it appears that Aaron Seltzer played a less active role as the attorney for David Reecher and his other defendant clients.  Aaron Seltzer was prohibited from practicing law for failure to pay his annual assessment to the Client Protection Fund by an Order entered on April 7, 2010 by the Court of Appeals of Maryland.  Defendant's Ex. 74.  Less than two weeks earlier (on March 25, 2010), Aaron Seltzer filed a motion to withdraw his appearance in the Circuit Court.  Plaintiff's Ex. 39, p. 12 of 26.  According to a docket entry on May 28, 2010, however, that motion was denied on April 10, 2010.  Plaintiff's Ex. 39, p. 14 of 26 ("the motion to withdraw appearance filed by defendant's attorney, aaron g. seltzer is denied.").

Well after entry of the judgment against David Reecher by the Circuit Court, Aaron Seltzer was disbarred effective October 7, 2011 by a Per Curiam Order entered by the Court of Appeals of Maryland. Defendant's Ex. 73. The opinion explaining the reasons for entry of that order was entered on December 22, 2011 and is reported at <u>Attorney Grievance Commission v. Seltzer</u>, 424 Md. 94 (2011). The reasons for his disbarment involved serious misconduct, but there is nothing in the record to suggest that such misconduct related in any way to Aaron Seltzer's representation of David Reecher or the other defendants.

In any event, Aaron Seltzer was admitted to practice law in Maryland and was counsel of record for David Reecher in the Circuit Court at the time the Third Amended Complaint was served on him on January 14, 2010. Moreover, he remained admitted to practice until at least April 7, 2010 – that is, until a date more than nine weeks after the deadline for David Reecher to file an answer to the Third Amended Complaint.[13]

### The Subsequent Course of the Circuit Court Litigation

Because no answer or other response to the Third Amended Complaint was ever filed by David Reecher, Chesapeake, Eric Golden, Landco, or 5444 Taylor Street, LLC, the Circuit Court declared David Reecher and the other defendants to be in default by an Order dated October 13, 2010, and set a hearing on ex parte proof for December 17, 2010. Plaintiff's Ex. 2, DCP-031; Plaintiff's Ex. 39, p. 28. In accordance with Rule 2-613 of the Maryland Rules of Civil Procedure, the Clerk of the Circuit Court issued a Notice of Default Order on October 21, 2010 that notified David Reecher of (i) the entry of an order of default against him, (ii) his right to

---

[13] Under Rule 2-341 of the Maryland Rules of Civil Procedure, an answer must be filed within 15 days after service of an amended complaint. Thus, in this instance, David Reecher's answer was due on January 29, 2010.

move to vacate that order within 30 days of its entry, and (iii) the hearing on ex parte proof scheduled for December 17, 2010.[14]  Plaintiff's Ex. 2, DCP-032; Plaintiff's Ex. 39, p. 32.

Neither David Reecher nor any of the other defendants ever filed a motion to vacate the order of default.  Accordingly, the Honorable C. Philip Nichols conducted a hearing on December 17, 2010 in the Circuit Court for the purpose of determining the damages to be awarded against David Reecher and the other remaining defendants.  Daisy Phillip and her attorney, Joseph H. Ostad, appeared at the hearing; however, none of the defendants appeared.  A copy of the transcript of the hearing before Judge Nichols was introduced at the trial in this court.  Plaintiff's Ex. 3.

Daisy Phillip testified under oath at the hearing before Judge Nichols and her attorney offered exhibits that were admitted into evidence.  Her testimony included the following facts.  Daisy Phillip graduated from high school in 1985, which was her highest level of education.  She purchased the Property in 1999 for $115,000.  She lived there until 2007, when she moved as a result of events that are the subject matter of this dispute.  At that time, she was employed as a bus driver and experienced a cut in hours.  As a result, she was having difficulty keeping up with her mortgage and utility payments.  The balance due on her mortgage at the time was a little less than $100,000.  She decided to sell her house so that she could get the equity out of the Property

---

[14]  In his testimony at trial in this court, David Reecher denied that he received the Notice of Default Order.  The Clerk of the Circuit Court addressed to Notice of Default to David Reecher at "1633 Bald Eagle Road, Arnold, MD 21012."  Plaintiff's Ex. 2, DCP-032; Plaintiff's Ex. 39, p. 32.  The Articles of Organization and the Operating Agreement for 5444 Taylor Street, LLC both list "1633 Bald Eagle Road, Arnold, Maryland 21012" as, among other things, the address of David Reecher as the resident agent for 5444 Taylor Street, LLC.  Plaintiff's Ex. 7, DCP-125 and DCP-127.  Moreover, in paragraph 6(u) of his Amended Answer filed in this adversary proceeding [Docket No. 16], David Reecher admits that his address is 1633 Bald Eagle Road, Arnold, Maryland 21012.  I do not believe David Reecher's testimony denying receipt of the Notice of Default Order is credible, and I find that he did in fact receive the Notice of Default Order.

and could then put that money down on another house and lower her monthly mortgage payment. Plaintiff's Ex. 3, DCP-042 through DCP-046.

      Daisy Phillip also testified that she had never formed a limited liability company and did not understand the meaning of the term. She did not intend for title to the Property to be transferred to 5444 Taylor Street, LLC, nor did she see or sign the settlement or disbursement statements for the transfer of the Property to 5444 Taylor Street, LLC. She never intended to assign any interest in 5444 Taylor Street, LLC to Landco or any other party. She did not see, sign, or authorize anyone to sign the Residential Contract of Sale submitted by Antonio Saabedra and Josefa Rosales. She did not see and did not authorize anyone to sign on behalf of her or on behalf of 5444 Taylor Street, LLC the Deed that transferred the Property to Antonio Saabedra and Josefa Rosales,[15] nor did she see or sign the HUD-1. She did not see the Disbursement Statement or authorize the net proceeds of $151,272.84 to be wire transferred to 5444 Taylor Street, LLC. And lastly, she never received any money from the defendants other than the $1,000 check from Landco payable to Daisy High.[16] Plaintiff's Ex. 3, DCP-047 through DCP-054.

      Daisy Phillip testified that she did not learn about the sale of the Property until sometime in early December of 2007 when Eric Golden called her by telephone with the news that "they had moved the house." In that conversation, Daisy Philip asked Eric Golden when she would be

---

[15] A copy of the Deed to Antonio Saabedra and Josefa Rosales was attached as Exhibit K to the Third Amended Complaint. Plaintiff's Ex. 1, ¶ 29. Although the Third Amended Complaint was admitted into evidence in this court without that exhibit attached and the Deed was not offered or admitted into evidence at trial, a copy of that Deed was admitted into evidence as Exhibit No. 8 at the December 17, 2010 hearing in the Circuit Court. Plaintiff's Ex. 3, DCP-052, ln. 25.

[16] The $1,000 check is referred to in the Third Amended Complaint. A copy of the $1,000 check was admitted into evidence at trial in this court. Plaintiff's Ex. 21, DCP-349. The $1,000 check was also admitted into evidence as Exhibit No. 11 at the December 17, 2010 hearing in the Circuit Court. Plaintiff's Ex. 3, DCP-055, ln. 13.

getting the equity out of the Property; a question to which he responded by telling her to call him back after Christmas.  When Daisy Philip contacted him on December 26, 2007, Eric Golden told her he was on vacation and to call him back in January.  When she contacted him in January of 2008, he told her he would have to "talk to his boss" and get back to her.  Daisy Philip testified that Eric Golden never called her back, did not respond to her calls, and only answered the telephone when she resorted to the subterfuge of calling him from a payphone.  In that instance, Eric Golden stated that "the real estate market is slow at this time," that "they didn't have the money," that they would try to send her $1,000 per week, and that when the real estate market improved "he would send [her] the full amount that is due to [her]."  Daisy Phillip responded by telling "him that was not part of the deal."  After she received and cashed the $1,000 check because she "needed the money,"[17] Daisy Phillip called Eric Golden again and "asked him where was the rest of [her] money," at which point Eric Golden told her that "was not part of the deal."  Daisy Phillip responded by telling him she "still had claims … over my house." After that conversation, Daisy Phillip went to the courthouse, obtained copies of the documents that had been filed, and hired a lawyer.  Plaintiff's Ex. 3, DCP-055 through DCP-057.

The transcript makes clear that Judge Nichols concluded based upon the admitted allegations of the Third Amended Verified Complaint, Daisy Phillip's testimony, and the other evidence presented at the December 17, 2010 hearing that each of the remaining defendants, including David Reecher, was liable jointly and severally to Daisy Phillip for fraudulent and other wrongful conduct that warranted an award of both compensatory and punitive damages. Part way through the testimony by Daisy Phillip, the following colloquy occurred:

---

[17]  The $1,000 check was dated March 5, 2008, was payable to "Daisy High," was endorsed and cashed by Daisy Phillip, and cleared the account of Landco at Wachovia Bank, N.A. on March 14, 2008.  Plaintiff's Ex. 21, DCP-349.  At trial in this court, David Reecher testified that he signed the $1,000 check on behalf of Landco.

THE COURT:  Since we are here on ex-parte proof --

MR. OSTAD:  Yes.

THE COURT:  And it is uncontested, tell me how we figure the damages and we are done with this.

MR. OSTAD:  One of the components of the damages is punitive damages Your Honor.  I was just going through this as to what they did to her and how they basically --

THE COURT:  They swindled her out of her home.

MR. OSTAD:  Yes.

THE COURT:  We are there.

Plaintiff's Ex. 3, DCP-047, ln. 6-17.  Daisy Phillip was then further examined by her counsel and a number of exhibits were admitted into evidence.  At the conclusion of the hearing, Judge Nichols determined that the amount of compensatory damages to be awarded was $150,000.  At which point the hearing concluded as follows:

THE COURT:  How much are you looking for in punitive damages?

MR. OSTAD:  Your Honor what we would ask for in punitive damages is $500,000.00 on each Counts that we've forwarded -- that we've pled in this case and there are, I believe, seven Counts on this for various actions and Counts to include, you know, conspiracy, intentional misrepresentation, negligent misrepresentation, fraud, concealment, conversion and unfair trade practices.

THE COURT:  Judgment in favor of Plaintiff against the Defendants $150,000.00; *$500,000.00 in punitive damage on each Count*, plus costs of Court.  Thank you all very much.

MR. OSTAD:  Thank you Your Honor.

Plaintiff's Ex. 3, DCP-060, ln. 1-15 (emphasis added).

Although counsel for Daisy Phillip obviously was mistaken as to the number of counts in which she sought punitive damages (there were five, not seven), there is no ambiguity as to the nature of the judgment entered by the Circuit Court. The Certified Copy of Judgment and Docket Entries for the December 17, 2010 hearing and the resulting Daily Sheet and Judgment of the Circuit Court were both admitted into evidence at trial. Plaintiff's Ex. 4. The Daily Sheet states "[c]ompensatory damages assessed at $150,000.00" and "[p]unitive damages assessed at $500,000.00 for each counts 3, 4, 7, 8 and 9." The Judgment as docketed on January 3, 2011 by the Circuit Court states in essence as follows:

> This matter having been decided by a judge: with Judge Nichols presiding, it is this 17th day of December, 2010,
>
> ORDERED AND ADJUDGED that:
>
> Judgment is granted in favor of Plaintiff Daisy Couloote Phillip
>
> And against Defendants'; Chesapeake Home Buyers; Eric Golden; David Reecher; Landco Investments, Inc.; 5444 Taylor Street, LLC jointly and severly with interest from date and costs.
>
> in the sum of $2,650,000.00.
>
> Costs are assessed against Defendants'.

Plaintiff's Ex. 4, DCP-090 (inapplicable or instructive form text deleted) (typographical errors in the original).

Thus, the record before this court demonstrates that the Circuit Court found based upon the undisputed allegations in the Third Amended Verified Complaint and the evidence presented at the December 17, 2010 hearing that David Reecher and the other defendants were jointly and severally liable under Maryland law to Daisy Phillip on each of the five counts for which she sought punitive damages – that is, liable to her on each of her five separate claims for civil

conspiracy, intentional misrepresentation, constructive fraud, concealment and non-disclosure, and conversion.

## The Evidence Presented at Trial in This Court

As indicated above, a lengthy trial was conducted in this court at which eight witnesses (including Daisy Phillip and David Reecher) testified and numerous documents were admitted into evidence. During that time I had the opportunity to observe the demeanor, and judge the credibility, of the witnesses. Based upon that trial, I make the following additional findings of fact.

I found Daisy Phillip's testimony to be credible. I believe her testimony that she intended to sell the Property to obtain the equity value for use in purchasing a more affordable home and that she was induced by misrepresentation and fraud into signing blank documents that resulted in an entirely different transaction which diverted that equity to a corporation owned and controlled by David Reecher. I believe her testimony that Eric Golden promised to provide her with copies of the documents as ultimately completed and executed, but never did so. In addition, I believe her testimony that she met David Williamson, the notary who purportedly executed the various documents at issue in the transaction, for the first time on the first day of trial in this court.

I did not find David Reecher's testimony to be credible. David Reecher is an experienced and sophisticated business man. He was involved in owning and running a number of businesses (including real estate related businesses) before forming Landco in 2003. David Reecher was the President and sole stockholder of Landco. David Reecher and his wife, Cheryl Reecher, each owned a 50% interest in DR Holdings, Inc. ("DRH"). DRH owned a 40% interest in 1, 2, 3 for Real Estate, L.L.C., the broker David Reecher engaged to list the Property for sale. Gold

Monster, Inc., which was owned by Eric Golden, also owned a 40% interest in 1, 2, 3 for Real Estate, L.L.C.  Peter Fastow, an attorney who represented Landco and 1, 2, 3 for Real Estate, L.L.C. and who did closings for Veracity Title, owned a 10% interest in 1, 2, 3 for Real Estate, L.L.C.

David Reecher hired, trained, and supervised the employees of Landco.  At the times relevant to this dispute, the only employees of Landco were David Reecher, Eric Golden, Gary Rand, David Williamson, Lisa Lima, and Tina Doyle.  Landco conducted its business from an office in the basement of David Reecher's residence at 1633 Bald Eagle Road, Arnold, Maryland 21012 where he could supervise and monitor the activities of Landco's employees on a daily basis.  David Reecher worked closely with Eric Golden; so closely in fact, that Lisa Lima characterized them as partners in her testimony.  David Reecher reviewed and approved all contracts and other deal documents on behalf of Landco.  As he stated in his testimony, he was the one "in charge."

David Reecher signed many of the documents related to the transactions that resulted in transfer of the Property from Daisy Phillip to Antonio Saabedra and Josefa Rosales.  The Standard Purchase and Sale Agreement [Plaintiff's Ex. 7, DCP-115] was signed by David Reecher on behalf of or as the "Buyer."[18]  He signed the Articles of Organization in his individual capacity to express consent to serving as the resident agent for 5444 Taylor Street, LLC.  Plaintiff's Ex. 7, DCP-124; Plaintiff's Ex. 37.  He signed the Assignment on behalf of Landco.  Plaintiff's Ex. 7, DCP-138.  When the Property was first listed for sale for $314,700 in May of 2007 with 1, 2, 3 for Real Estate, L.L.C. as the broker and Mark J. Powers as the listing

---

[18]  Although the buyer is designated in the first line of the agreement as "Landco Investment, Inc. or assigns," David Reecher's signature on the Standard Purchase and Sale Agreement does not bear any indication that he executed the contract in a representative capacity.

agent, David Reecher signed the Exclusive Right to Sell – Listing Agreement For Improved Real Property (the "First Listing Agreement") on behalf of or as the "Seller/Owner."[19]  Plaintiff's Ex. 16, DCP-250.  When the listing with 1, 2, 3 for Real Estate, L.L.C. was revised in June of 2007 to increase the listing price to $344,700 and to designate Ray Burton as the listing agent, David Reecher again signed the Exclusive Right to Sell – Listing Agreement For Improved Real Property (the "Second Listing Agreement") on behalf of or as the "Seller/Owner."[20]  Plaintiff's Ex. 16, DCP-266.

David Williamson was a notary public at the times relevant to this dispute and his signature appears on most of the relevant documents.  He was an employee of Landco from 2004 until August of 2007.  He was trained by David Reecher to perform a number of functions in Landco's business.  When his employment was terminated, David Williamson left his notary record book in his desk in the basement of David Reecher's residence.  The notary record book was not introduced into evidence at trial, and David Reecher testified he was unable to locate it.  Based upon his testimony, I do not believe David Williamson knows what documents he actually properly notarized in the presence of the person whose signature is purported to appear on the document.  David Williamson claimed in his testimony that he met with Daisy Phillip, but he could not remember her or where he met with her.  I do not believe he ever met with Daisy Phillip or actually witnessed her execute any of the documents that purport to bear her signature.

---

[19]  Although the first paragraph of the First Listing Agreement designates the seller as "Daisey M. Williams and/or Taylor Avenue LLC," David Reecher's signature on the agreement does not bear any indication that he executed the contract in a representative capacity.

[20]  Although the first paragraph of the Second Listing Agreement designates the seller as "DAISEY M. WILLIAMS and/or TAYLOR ST, LLC," David Reecher's signature on the agreement does not bear any indication that he executed the contract in a representative capacity.

David Williamson himself questioned the authenticity of what purports to be his signature on documents signed by Daisy Phillip. He did not believe that his signature is the one that appears on (i) the witness line next to Daisy Phillip's signature on the Operating Agreement 5444 Taylor St. LLC, and (ii) the three witness lines next to the signatures of Daisy Phillip and David Reecher on the Assignment. Plaintiff's Ex. 7, DCP-137 and DCP-142.

David Williamson also stated it was not his practice to act as a witness on documents that he notarized. As a result, he did not believe that his signature is the one that appears on the witness line next to Daisy Phillip's signature on the blank deed to 5444 Taylor Street, LLC or on the deed to 5444 Taylor Street, LLC as recorded in the Land Records of Prince George's County, Maryland. Plaintiff's Ex. 12, DCP-233, DCP-235; Plaintiff's Ex. 15, DCP-244.

David Williamson likewise questioned the authenticity of the notarization that appears on the Affidavit that was recorded with the Deed to 5444 Taylor Street, LLC. Plaintiff's Ex. 15, DCP-247. He doubted it was genuine for two reasons: (i) he did not recall any one-page affidavits, and (ii) he would not have notarized a document on a date different from the date on which it was executed.

David Williamson also testified about a number of documents related to transactions with other parties on which his signature or notarization appeared. Plaintiff's Ex. 25. In many instances, he questioned the authenticity of what appeared to be his signature as witness. With respect to a transaction involving Cheryl Stubblefield, he stated that signatures that were purported to notarize an affidavit and a deed were not genuine. Plaintiff's Ex. 25, DCP-386 and DCP-388.

David Reecher testified that he believed the $1,000 check from Landco paid to Daisy Phillip was for a "bird dog" agreement – that is, that Daisy Phillip was being hired by Eric

Golden to recruit other clients who would be interested in selling their homes.  The testimony of all parties, however, including David Reecher himself, was that Landco did not regularly engage in "bird dog" arrangements.  Daisy Phillip had no knowledge of "bird dog" agreements, did not agree to recruit clients for Eric Golden, and believed the $1,000 check was an installment on the amount owed to her for the equity of the sale of the Property.

I do not believe David Reecher's testimony that he was unaware of and did not participate in the misrepresentations and fraud perpetrated on Daisy Phillip.  I do not believe David Reecher's testimony that he did not know that Eric Golden obtained signatures on blank documents (including those signed by Daisy Phillip) that were later completed by Eric Golden or other Landco employees.  I do not believe that David Reecher did not know about the irregularities in the notarization practices at Landco.  Many things about his testimony do not ring true.  The most telling in my mind is the so-called "bird dog" agreement.  No person with business experience and acumen like that of David Reecher would – as he would have this court believe – enter into an agreement under which an obviously dissatisfied customer would supposedly be paid to solicit new customers for his business unless he was motivated to cover up or mitigate liability for an illegitimate transaction involving that same customer.

Based upon the evidence presented in this court, I believe that the course of events with respect to the Property took place as alleged in the Third Amended Complaint.  Daisy Phillip was induced by misrepresentation and fraud to sign documents that were subsequently filled out in a way to set up a step transaction through 5444 Taylor Street LLC that was completely different from what she was led to believe or intended and that deprived her of her objective for the transaction – namely, liquidating the equity in the Property in order to acquire a more affordable residence.   David Reecher, Eric Golden, Gary Rand, Lisa Lima, and David

Williamson each participated in this wrong perpetrated on Daisy Phillip from the time Eric Golden first met with Daisy Phillip to when Gary Rand (acting at the direction of David Reecher) attended the closing on sale of the Property to Antonio Saabedra and Josefa Rosales. I agree with the conclusion reached by Judge Nichols that they "swindled her out of her home." Thus, I find the evidence presented in this court to be consistent with, and to support the judgment entered by, the Circuit Court.

## CONCLUSIONS OF LAW

The exceptions to discharge provided for in § 523 of the Bankruptcy Code are to be construed narrowly "to protect the purpose of providing debtors a fresh start." Foley & Lardner v. Biondo (In re Biondo), 180 F.3d 126, 130 (4th Cir. 1999). Conversely, this court must be "equally concerned with ensuring that perpetrators of fraud are not allowed to hide behind the skirts of the Bankruptcy Code." Id. As the Supreme Court has indicated, while the Bankruptcy Code provides a debtor with "'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt,'" the Bankruptcy Code also "limits that opportunity to the 'honest but unfortunate debtor.'" Brown v. Felsen, 442 U.S. 127, 128 (1979) (quoting Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934)).

The burden of proof is on the creditor to establish by a preponderance of the evidence that a debt is not dischargeable. Kubota Tractor Corp. v. Strack (In re Strack), 524 F.3d 493, 497 (4th Cir. 1991) (citing Grogan v. Garner, 498 U.S. 279, 291 (1991)); Colombo Bank v. Sharp, 477 B.R. 613, 619 (D. Md. 2008). As the Fourth Circuit has explained, a creditor asserting a claim for nondischargeability under § 523(a)(2)(A) must prove five elements by a preponderance of the evidence – namely, "(1) false representation, (2) knowledge that the representation was

false, (3) intent to deceive, (4) justifiable reliance on the representation, and (5) proximate cause of damages." Nunnery v. Rountree (In re Rountree), 478 F.3d 215, 218 (4th Cir. 2007).

When (as here) a creditor has reduced a claim to judgment in a state court prior to bankruptcy, the bankruptcy court "must give the same preclusive effect to [the] state court judgment as the forum that rendered the judgment would have given it." Sartin v. Macik, 535 F.3d at 287 (citing Allen v. McCurry, 449 U.S. 90, 96 (1980)); Pahlavi v. Ansari (In re Ansari), 113 F.3d 17, 19 (4th Cir. 1997)). Therefore, this court must apply Maryland law in determining the extent to which preclusive effect must be given to the judgment in the Circuit Court entered by default, but after active participation by David Reecher in the early stages of the proceeding.

"In Maryland a default judgment is considered more akin to an admission of liability than to a punitive sanction." Hayden v. Bullinger, 350 Md. 452, 472 (1998). See also Hopkins v. Easton Nat'l Bank, 171 Md. 130, 134 (1936); Pacific Mortgage & Inv. Group, Ltd. v. Horn, 100 Md. App. 311, 332 (1994); Gotham Hotels, Ltd. v. Owl Club, Inc., 26 Md. App. 158, 173 (1975). Maryland has adopted a four-part test to determine whether collateral estoppel should apply to a judgment:

> 1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?
>
> 2. Was there a final judgment on the merits?
>
> 3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?
>
> 4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

Colandrea v. Wilde Lake Community Association, 361 Md. 371, 391 (2000) (citing Washington Suburban Sanitary Commission v. TKU Associates, 281 Md. 1, 18-19 (1977).

In applying this test to default judgments, the determination usually rests on whether the judgment was actually litigated.  This requirement is met when (as is the case here) a defendant files an answer or appears in the matter, the issues are considered by a jury or finder of fact, the defendant had notice and an opportunity to argue on its behalf, and the defendant had an incentive to litigate the matter in the prior proceeding and reasonably foresee litigation on the same issue.  Nestorio v. Assocs. Commercial Corp. (In re Nestorio), 250 B.R. 50, 56 (D. Md. 2000).

With respect to default judgments entered against defendants such as David Reecher who filed a motion to dismiss and thus actively participated in earlier stages of the prior litigation, this court has held that collateral estoppel applies.  As Judge Stephen Derby concluded, "it would be unfair to permit a party to avoid the preclusive effect of an anticipated adverse decision merely by not appearing for trial or by not having a factual defense to present."  Ramsey v. Bernstein (In re Bernstein), 197 B.R. 475, 480 (Bankr. D. Md. 1996).  Similarly, Judge Robert Gordon found that "there is an expectation by the parties that the issue will be decided, and the subsequent court is not in a position to evaluate a party's litigation strategy in another case" when, as he put it quite succinctly, "the party's investment in the former litigation drifts from participatory to unresponsive."  Reed v. Reed (In re Reed), 2013 WL 6497926, at *7 (Bankr. D. Md. 2013).  David Reecher's participation in the Circuit Court litigation falls into this category and he should not be permitted a second opportunity to litigate the same issues in this court.

David Reecher also urges this court to disregard the judgment and the findings of the Circuit Court because of the disbarment of his counsel in the Circuit Court litigation.  It is well settled law, however, that a party is bound by their choice in counsel and cannot relitigate a matter if they later regret that choice.  As the Supreme Court stated,

> Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

Link v. Wabash RR. Co., 370 U.S. 626, 633-34 (1962) (quotations omitted).  See also Coltec Indus., Inc. v. Hobgood, 280 F.3d 262, 274 (3rd Cir. 2002) ("[c]ourts have not looked favorably on the entreaties of parties trying to escape the consequences of their own 'counseled and knowledgeable' decisions").

Thus, this court must determine the extent to which the findings of the Circuit Court awarding punitive damages on the five counts of the Third Amended Verified Complaint for civil conspiracy, intentional misrepresentation, constructive fraud, concealment and non-disclosure, and conversion support a determination that the judgment entered in favor of Daisy Phillip is nondischargeable under § 523(a)(2)(A).  Under Maryland law, in order to make a finding that a plaintiff is entitled to punitive damages a court must make a finding of "actual malice" which is "characterized by knowing and deliberate wrongdoing."  Ellerin v. Fairfax Sav., F.S.B., 337 Md. 216, 228 (1995).  See also Darcars Motors of Silver Spring, Inc. v. Borzym, 379 Md. 249, 264 (2004) ("[A] jury may award punitive damages only when a plaintiff has demonstrated by clear and convincing evidence that the defendant acted with 'actual malice.' We have defined the term 'actual malice' as 'conduct of the defendant characterized by evil motive, intent to injure, ill will, or fraud.'" (citations omitted)).

As a starting point, the award of punitive damages by Judge Nichols was a finding that the actions taken by David Reecher showed the requisite malice toward Daisy Phillip. Moreover, the award of punitive damages on each of the five counts necessarily included a

finding by the Circuit Court that Daisy Phillip had proven all the elements of a claim under Maryland law not merely for intentional misrepresentation, but also for civil conspiracy, constructive fraud, concealment and non-disclosure, and conversion.[21]   In evaluating the dischargeability of each of the five counts on which punitive damages were awarded by the Circuit Court, this court must decide whether in determining that Daisy Phillip had proven the elements of each cause of action under Maryland law, the Circuit Court also must necessarily have found facts establishing the elements for nondischargeability under § 523(a)(2).  If that is not the case, the Supreme Court has made clear in Brown v. Felson that Daisy Phillip is entitled to present extrinsic evidence in this court to establish the nondischargeable nature of her claims. 442 U.S at 138-39.

It is well settled that § 523(a)(2)(A) bars discharge not merely of claims for money obtained by fraud or misrepresentation, but also of all claims arising from the money so obtained.  As the Supreme Court has held, § 523(a)(2)(A) "encompasses any liability arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor."  Cohen v. de la Cruz, 523 U.S. 213, 223 (1998).  See also Rountree, 478 F.3d at 220 ("[The Supreme Court] has

_____

[21]  This court need not consider David Reecher's suggestion that the award of punitive damages on each of the five counts was a misapplication by the Circuit Court of the Maryland law of punitive damages.  If such was the case, his remedy lay in the Maryland courts of appeal and not in review of that decision by the bankruptcy court.  See I.R.S. v. Teal (In re Teal), 16 F.3d 619, 622 (5th Cir. 1994) (federal court "must give res judicata effect to a prior judgment even if it would be voidable on appeal because of legal error") (citing Federated Dept. Stores, Inc. v. Moitie, 452 U.S. 394, 398-99 (1981)); Goss v Goss, 722 F.2d 599, 605 (10th Cir. 1983) ("The res judicata or collateral estoppel 'consequences of a final, unappealed judgment on the merits [are not] altered by the fact that the judgment may have been wrong.'") (quoting Federated Dep't Stores, 452 U.S. at 398).  Whatever the law of Maryland, the award of punitive damages on each of the five counts necessarily predicated on a finding by Judge Nichols that Daisy Phillip had proven the elements for a claim under each of the five causes of action.  The question here is limited to determination of whether one or more of them is a claim excepted from discharge under § 523(a)(2)(A).

determined that subsection (a)(2)(A) provides an exception to the discharge of punitive damages when those punitive damages arise from a debt obtained through fraud.").

For the reasons that follow, this court concludes that the damages awarded by the Circuit Court for intentional misrepresentation, civil conspiracy, and concealment and non-disclosure are claims that are nondischargeable under § 523(a)(2)(A), and that those awarded for constructive fraud and conversion are dischargeable under § 523(a)(2)(A).

### Intentional Misrepresentation

The elements of intentional misrepresentation (also known in Maryland simply as fraud or deceit) are nearly identical to the bankruptcy cause of action for nondischargeability under § 523(a)(2)(A).   To prove a claim for intentional misrepresentation under Maryland law a plaintiff must show:

> (1) that a representation made by a party was false; (2) that either its falsity was known to that party or the misrepresentation was made with such reckless indifference to truth to impute knowledge to him; (3) that the misrepresentation was made for the purpose of defrauding some other person; (4) that that person not only relied upon the misrepresentation but had the right to rely upon it with full belief of its truth, and that he would not have done the thing from which damage resulted if it had not been made; and (5) that that person suffered damage directly resulting from the misrepresentation.

Nat'l City Bank of Minneapolis v. Lapides (In re Transcolor Corp.), 296 B.R. 343, 372 (Bankr. D. Md. 2003) (citing B.N. v. K.K., 312 Md. 135, 149 (1988)).  As a practical matter, there is no substantive difference between Maryland law and the test applicable under § 523(a)(2)(A) of the Bankruptcy Code.   The damages awarded by the Circuit Court on the intentional misrepresentation count of the Third Amended Complaint are nondischargeable because every element needed to prove nondischargeability pursuant to § 523(a)(2)(A) – that is, (i) false

representation, (ii) knowledge that the representation was false, (iii) intent to deceive, (iv) justifiable reliance on the representation, and (v) proximate cause of damages – is required in order to sustain a claim for intentional misrepresentation under Maryland law.

Numerous courts have found that state court judgments for intentional misrepresentation are subject to collateral estoppel in bankruptcy court actions to determine nondischargeability. See, e.g., Stennis v. Davis (In re Davis), 486 B.R. 182, 191 (Bankr. N.D. Cal. 2013) ("[t]he state court judgment for intentional misrepresentation is sufficiently identical with the issues under § 523(a)(2)(A) to establish nondischargeability by collateral estoppel."); Catercorp, Inc. v. Henicheck, Jr. (In re Henicheck), 186 B.R. 211, 217 (Bankr. E.D. Va. 1995) (holding that a state court judgment for intentional misrepresentation was nondischargeable pursuant to § 523(a)(2)(A) and that the bankruptcy court was precluded from relitigating the matter). In addition, Judge Derby of this court has also held that a debtor was estopped from relitigating a state court default judgment for intentional misrepresentation and that the factual finding for the state court judgment was sufficient for a finding of nondischargeability under § 523(a)(2)(A). Fleming v. McCoskey (In re McCoskey), 2006 WL 5217793, at *5 (Bankr. D. Md. Feb. 19, 2006).

Thus, the judgment of the Circuit Court finding David Reecher liable to Daisy Philip for intentional misrepresentation was sufficient to establish as a matter of federal law (without need for consideration of extrinsic evidence) that her claim for actual and punitive damages under Count 4 of the Third Amended Complaint is excepted from discharge and thus nondischargeable under § 523(a)(2)(A).

## Civil Conspiracy

Under Maryland law, liability for civil conspiracy requires a finding of "a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff." Rosen v. Kore Holdings, Inc. (In re Rood), 459 B.R. 581, 603 (Bankr. D. Md. 2011) (citing Hoffman v. Stamper, 385 Md. 1, 24 (2005)). The underlying unlawful act or tort of the conspiracy for which David Reecher was found liable by the Circuit Court included intentional misrepresentation, which as discussed above is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Numerous courts have found debts arising on account of a civil conspiracy to be nondischargeable where the underlying unlawful act was nondischargeable. See, e.g., Aetna Casualty and Surety Co. v. Markarian (In re Markarian), 228 B.R. 34, 46 (B.A.P. 1st Cir. 1998) (affirming bankruptcy court's decision that all debts related to jury finding against the debtor for common-law fraud, statutory fraud and conspiracy were nondischargeable pursuant to §523(a)); Fed. Deposit Ins. Corp. v. Smith (In re Smith), 160 B.R. 549, 555 (N.D. Tex. 1993) (holding debt for conspiracy nondischargeable under § 523(a)(6) even though his conduct was not an independent, recognized tort but his actions were willful and malicious); MacDonald v. Buck (In re Buck), 75 B.R. 417, 420-422 (Bankr. N.D. Cal. 1987) ("a debtor who has made no false representation may nevertheless be bound by the fraud of another if a debtor is a knowing and active participant in the scheme to defraud"); Multiut Corp. v. Draiman (In re Draiman), 2006 WL 1876972, at *8 (Bankr. N.D. Ill. June 22, 2006) (finding a state court judgment for violations of the Uniform Deceptive Trade Practices Act, tortious interference with prospective business relationships and conspiracy to breach fiduciary duty and employment contract nondischargeable pursuant to 11 U.S.C.

§ 523(a)(6)); <u>A&W Industries, Inc. v. Goldblatt (In re Goldblatt)</u>, 2002 Bankr. LEXIS 2011, at

*25 (Bankr. N.D. Tex. Nov. 7, 2002) (finding debt nondischargeable under § 523(a)(6) where

debtor conspired to commit fraud), <u>aff'd</u>, 2004 WL 594604 (N.D. Tex. Mar. 24, 2004), <u>aff'd</u> 111

Fed. Appx. 765 (5th Cir. 2004) (unpublished), <u>cert. denied</u>, 544 U.S. 975 (2005).

The reasoning in one unreported opinion is particularly persuasive here.  The facts in

<u>Chandler v. Alexakis (In re Alexakis)</u>, 2012 Bankr. LEXIS 5795 (Bankr. S.D. Ohio, Dec. 13,

2012), were similar to those in the case at hand.  In that case, two homeowners (the Chandlers)

contacted the debtor's company regarding foreclosure prevention.  After a suit in state court

following the foreclosure of the Chandlers' home, the debtor was found liable for both fraud with

willful and malicious conduct and civil conspiracy.  The bankruptcy court found that the debtor's

"willing participation in a civil conspiracy that induced the Chandlers to part with money as well

as the Debtor's own fraudulent acts and statements that induced the Chandlers into a false sense

of security that ultimately led to the loss of their home" merited the conclusion that the judgment

debt owed to the Chandlers was excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

<u>Id.</u> at *26.  Similarly, the Circuit Court found that David Reecher was a willing participant in a

civil conspiracy to defraud Daisy Phillip.

Thus, the judgment of the Circuit Court finding David Reecher liable to Daisy Philip for

civil conspiracy was sufficient to establish as a matter of federal law (without need for

consideration of extrinsic evidence) that her claim for actual and punitive damages under

Count 3 of the Third Amended Complaint is excepted from discharge and thus nondischargeable

under § 523(a)(2)(A).

### Concealment and Non-Disclosure

Like intentional misrepresentation, the elements of a claim for concealment and non-disclosure under Maryland law are nearly identical to the elements for nondischargeability under § 523(a)(2)(A).  There is, however, one key difference.  A plaintiff must show that "(1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment." Simms v. Mut. Benefit Ins. Co., 137 Fed. Appx. 594, 600 (4th Cir. Md. 2005) (citing Green v. H & R Block, Inc., 355 Md. 488, 525 (1999)).  The difference here lies in the *omission* of a material fact or representation as opposed to the *making* of a false representation as required under § 523(a)(2)(A).

While the parties directed the court to no opinion (reported or otherwise) that has held that § 523(a)(2)(A) applies to a claim under Maryland law (or the law of any other state) for concealment and non-disclosure, there is ample case law that a judgment for concealment and non-disclosure can be nondischargeable pursuant to § 523(a)(2)(A). See, e.g., Citibank (S.D.), N.A. v. Eashai (In re Eashai), 87 F.3d 1082, 1089 (9th Cir. 1996) ("bankruptcy courts have conceded that a debtor's silence or omission regarding a material fact can constitute a false representation"); Wolstein v. Docteroff (In re Docteroff), 133 F.3d 210, 216 (3rd Cir. 1997) ("'bankruptcy courts have overwhelmingly held that a debtor's silence regarding material fact can constitute a false representation actionable under 523(a)(2)(A).'") (quoting In re Horne, 823 F.2d 1285, 1288 (8th Cir. 1987)); Miller v. Cigna Ins. Co., 311 B.R. 57, 61 (D. Md. 2004) ("A debtor's silence regarding [certain] information can constitute a false misrepresentation actionable under 11 U.S.C. § 523(a)(2)(A)."); Fleet Resources v. Zwick (In re Zwick), 1997 WL

278973, at *1 (10th Cir. May 27, 1997) (affirming order holding that a state court judgment for fraudulent concealment is nondischargeable pursuant to § 523(a)(2)(A)).

Thus, the judgment of the Circuit Court finding David Reecher liable to Daisy Philip for concealment and non-disclosure was sufficient to establish as a matter of federal law that her claim for actual and punitive damages under Count 8 of the Third Amended Complaint is excepted from discharge and thus nondischargeable under § 523(a)(2)(A).

### Constructive Fraud

Constructive fraud does not require the making of a misrepresentation, but rather involves the breach of a duty.  Also, it does not require a finding of *actual* reliance on the part of the plaintiff, but focuses instead on whether the breach in duty would tend to deceive others. Constructive fraud under Maryland law is the "'breach of a legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests.'" Canaj, Inc. v. Baker & Div. Phase III, 391 Md. 374, 421-22 (2006) (citing Md. Envtl. Trust v. Gaynor, 370 Md. 89, 97 (2002)).  In the context of nondischargeability, however, exceptions to discharge for fraud require "positive fraud, or fraud in fact, involving moral turpitude or intentional wrong … and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality."  Neal v. Clark, 95. U.S. 704, 709 (1877) (interpreting § 17a(4) of the Bankruptcy Act of 1867, a predecessor of  § 523(a)(4) of the Bankruptcy Code).

Thus, the judgment of the Circuit Court finding David Reecher liable to Daisy Philip for constructive fraud was *not* sufficient to establish as a matter of federal law that her claim for actual and punitive damages under Count 7 of the Third Amended Complaint is excepted from discharge and thus nondischargeable under § 523(a)(2)(A).  Nothing in the extrinsic evidence

presented at trial would require this court to alter that conclusion or would otherwise make the damage claims against David Reecher for constructive fraud nondischargeable under § 523(a)(2)(A).

### Conversion

Lastly, under Maryland law conversion has only two elements – namely, a physical act of ownership or dominion over a person's property combined with the intent to exert such ownership or control over the property, regardless of whether they are doing so in good faith. Darcars Motors of Silver Spring, 379 Md. at 261-62 (citations omitted).  Conversion does not require any finding of a misrepresentation or reliance on the part of the plaintiff.  Kawaauhau v. Geiger 523 U.S. 57, 64 (1998) ("not every tort judgment for conversion is exempt from discharge");  Davis v. Aetna Acceptance Co., 293 U.S. 328, 332 (1934) ("a wilful and malicious injury does not follow as of course from every act of conversion … there may be a conversion which is innocent or technical, an unauthorized assumption of dominion").  In short, nothing in the law of conversion requires a finding of false representation, false pretense, or fraud as required by § 523(a)(2)(A).

Thus, the judgment of the Circuit Court finding David Reecher liable to Daisy Philip for conversion was ***not*** sufficient to establish as a matter of federal law that her claim for actual and punitive damages under Count 9 of the Third Amended Complaint is excepted from discharge and thus nondischargeable under § 523(a)(2)(A).  Nothing in the extrinsic evidence presented at trial would require this court to alter that conclusion or would otherwise make the damage claims against David Reecher for conversion nondischargeable under § 523(a)(2)(A).

## <u>Conclusion</u>

For these reasons, the judgment entered by the Circuit Court against David Reecher on the Third Amended Complaint is nondischargeable under 11 U.S.C. § 523(a)(2)(A) to the extent it awarded compensatory damages in the amount of $150,000, as well as punitive damages in the amount of $500,000 on Count 4 for intentional misrepresentation, $500,000 on Count 3 for civil conspiracy, and $500,000 on Count 8 for concealment and non-disclosure.  The punitive damages awarded on the remaining two counts, however, are not covered by the exception in § 523(a)(2)(A) and are subject to the discharge granted by this court to David Reecher. Accordingly, an order will be entered consistent with this memorandum opinion that grants in part and denies in part the relief sought in Daisy Phillip's complaint filed in this adversary proceeding.


cc:      All Parties
         All Counsel


**~ END OF OPINION ~**